# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
                                        )
**ANDERSON ALPHONSE,**                  )
                                        )
             **Petitioner,**            )
                                        )         **Civil Action No.**
        **v.**                          )         **21-11844-FDS**
                                        )
**ANTONE MONIZ,**                       )
                                        )
             **Respondent.**            )
_____)


## MEMORANDUM AND ORDER ON
## <u>PETITION FOR WRIT OF HABEAS CORPUS</u>

**SAYLOR, C.J.**

This is a petition for a writ of habeas corpus.  Petitioner Anderson Alphonse is a detainee of Immigration and Customs Enforcement who is currently located at the Plymouth County Correctional Facility.  Respondent Antone Moniz is the current superintendent of that facility.

Alphonse is a legal permanent resident who has resided in the United States since 1988.  In 2018, he was convicted of several state-law drug offenses.  After serving two years and ten months of a seven-year sentence, he was placed on parole and transferred to ICE custody.  ICE made an initial custody determination to detain him under 8 U.S.C. § 1226(c).  That determination was upheld by an immigration judge, and he has been in mandatory detention since then.

Alphonse has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that his convictions do not subject him to mandatory detention under 8 U.S.C. § 1226(c) and, alternatively, that he has been unreasonably detained without a bond hearing in violation of the Fifth Amendment.  For the following reasons, the petition for a writ of habeas

corpus will be denied.

I.   **Background**

A.   **Factual Background**

The facts are drawn from the petition for habeas corpus.

Anderson Alphonse is a 40-year-old legal permanent resident of the United States.  (Pet. ¶ 1).  His country of origin is Haiti.  (*Id.*).

According to Alphonse, when he was approximately six years old, his family fled Haiti to the United States after allegedly being persecuted by a paramilitary group known popularly as the Tonton Macoute.  (*Id.* ¶¶ 12-13).  Since 1988, he has resided in the United States.  He has two children who are both U.S. citizens.  (*Id.* ¶ 11).

In 2006, Alphonse was shot, and the remaining debris in his neck has left him with nerve damage.  (*Id.* ¶ 16).  According to Alphonse, he reported the shooter to the police and fully cooperated throughout the police investigation.  (*Id.*).  He contends that he is currently in the process of applying for a U Visa based on his cooperation with the police.  (*Id.* ¶ 24).

In 2012, Alphonse was placed in removal proceedings and charged as deportable as a legal permanent resident convicted of an aggravated felony, controlled-substance offense, and firearms offense.  (*Id.* ¶ 17).  However, an immigration judge subsequently cancelled his removal.  (*Id.*).  The details of those convictions are not in the record, and it appears that the proceeding is entirely separate from the present matter.

On June 14, 2016, Alphonse was charged in state court in New Jersey with two counts related to possession of controlled dangerous substances, two counts related to possession with intent to distribute a controlled dangerous substance, and one count of possession with intent to use drug paraphernalia.  (Pet. Ex. 11 at 43).  He pleaded not guilty.  (*Id.*).  On January 29, 2018, he was convicted under N.J. Stat. Ann. §§ 2C:35-10A(1) and 2C:35-5B(3) for possession of a

controlled dangerous substance and possession of a controlled dangerous substance with intent to distribute.  (Pet. Ex. 11 at 43; Pet. ¶ 18).  He subsequently received a sentence of seven years in state prison and ultimately served two years and ten months.  (Pet. Ex. 11 at 43).

Those 2018 criminal convictions triggered ICE's initial custody determination under 8 U.S.C. § 1226(c).  (Pet. ¶ 20; Pet. Ex. 2 at 1).  Petitioner is currently detained at the Plymouth County House of Corrections.  (Pet. ¶ 6).

### B.   **Procedural Background**

#### 1.   **Immigration Proceedings**

On November 30, 2020, DHS served Alphonse a Notice to Appear, alleging that he was removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for having committed two crimes of moral turpitude.  (Pet. Ex. 2 at 1-2).  On that same day, he was taken into mandatory detention pursuant to 8 U.S.C. § 1226(c).  (Pet. ¶ 20; Pet. Exs. 2; 3).  Also on that same day, he requested a *Joseph* hearing to review his custody determination.  (Pet. ¶ 20; Pet. Ex. 5).[1]  On December 18, 2020, an immigration judge determined he was properly detained under § 1226(c).  (Pet. Ex. 7).  Alphonse did not appeal that determination.  (Marfissi Decl. ¶ 13).

Alphonse appeared *pro se* before an immigration judge in removal proceedings on December 18, 2020.  (Pet. ¶ 22; Pet. Ex. 14 at 2).  He received a ten-day continuance to secure counsel.  (Pet. ¶ 22; Pet. Ex. 14 at 4-5).  He appeared *pro se* again before an immigration judge on December 28, 2020.  (Pet. ¶ 22; Pet. Ex. 14 at 7).  At his second appearance, he told the immigration judge that he had obtained counsel but that person was unable to appear at that time.  (Pet. ¶ 22; Pet. Ex. 14 at 7).  The immigration judge granted him a 35-day extension, but

---

[1] A *Joseph* hearing permits a detainee to "raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category."  *Demore v. Kim*, 538 U.S. 510, 514 (2003) (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002) and *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)).

proceedings actually resumed 45 days later.  (Pet. ¶ 22; *see* Pet. Ex. 14 at 8, 10).

On January 22, 2021, DHS conducted a custody determination as to Alphonse pursuant to the nationwide injunction in *Fraihat v. U.S. Immigr. & Customs Enf't,* 445 F. Supp. 3d 709 (C.D. Cal. 2020)*, rev'd and remanded,* 16 F.4th 613 (9th Cir. 2021).  (Pet. ¶ 21).  DHS concluded that he would remain detained in light of his risk factors and because he was a threat to public safety. (*Id.*).

At removal proceedings on February 10, 2021, DHS orally corrected an incorrect reference to a New Jersey statute that was included in the Notice to Appear.  (Pet. Ex. 14 at 12-13).  DHS was also given two weeks to brief the issue of derivative citizenship.  (Pet. Ex. 14 at 14).  Alphonse denied all charges of removability and moved to terminate proceedings through counsel.  (Pet. ¶ 23).  On February 24, 2021, DHS submitted its brief in support of removability. (Pet. Ex. 12 at 4).  It simultaneously lodged two additional charges of removability, alleging that his 2018 conviction for possession of a controlled dangerous substance with intent to distribute qualified as both an aggravated felony rendering him removable under § 1227(a)(2)(A)(iii) and as a controlled-substance offense rendering him removable under § 1227(a)(2)(B).  (*Id.*).

On March 24, 2021, the immigration judge denied Alphonse's motion to terminate the proceedings and sustained all three charges of removability.  (Pet. ¶ 23).  On May 12, 2021, the immigration judge denied his application for deferral of removal under the Convention Against Torture and ordered him removed to Haiti.  (*Id.*).

Alphonse filed a notice of appeal of the immigration judge's decision to the Board of Immigration Appeals.  (Pet. ¶ 23).  On June 24, 2021, the BIA issued a briefing schedule.  (*Id.*). On August 5, 2021, Alphonse submitted his supporting brief after a three-week extension granted by the BIA.  (*Id.*).  In that brief, he argued that the IJ erred in finding that his convictions

constituted both a controlled-substance offense and an aggravated felony; that the IJ erred in denying his claim under the CAT; that the BIA should consider changed country conditions in Haiti; and that new law affected his claim and required remand based on his relationship to his mother and uncle.  (*See* Pet. Ex. 15).  The government also filed its brief.  (Marfissi Decl. ¶ 22). As of this writing, that appeal remains pending.

**2.    Habeas Proceedings**

On November 12, 2021, Alphonse filed the present petition for a writ of habeas corpus. On November 23, 2021, respondent Antone Moniz filed a response.  On November 30, 2021, petitioner filed a reply.  The Court held a hearing on January 13, 2022, and took the matter under advisement.

**II.    Standard of Review**

Title 8, U.S.C. § 1226 governs the apprehension and detention of aliens during removal proceedings.  Although the government may generally release an alien on conditional parole or bond while his removability decision is pending, § 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018).  Pursuant to § 1226(c), the Attorney General is required to take into custody any alien who is inadmissible or deportable based on a conviction for "certain crimes of moral turpitude, controlled substance offenses, aggravated felonies, firearm offenses, or acts associated with terrorism."  *Gordon v. Lynch*, 842 F.3d 66, 67 n.1 (1st Cir. 2016); *see* 8 U.S.C. § 1226(c).  The Attorney General may release such an alien only if he decides "that release of the alien from custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding."  8 U.S.C. § 1226(c)(2).

III.   **Analysis**

A.      **Placement in Mandatory Detention**

Petitioner first contends that his 2018 convictions do not subject him to mandatory detention under 8 U.S.C. § 1226(c).  Specifically, he alleges that his convictions do not qualify as crimes of moral turpitude, controlled-substance offenses, or aggravated felonies.

As a preliminary matter, the Court must determine whether it has subject-matter jurisdiction to decide his claim.  Here, there is a substantial question whether the Court has the authority to decide if the mandatory detention statute, § 1226(c), properly applies to petitioner.

1.      **Section 1252(b)(9)**

Title 8, U.S.C. § 1252(b)(9) provides that judicial review of all questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States under [Subchapter II of Title 8] shall be available only in judicial review of a final order."  That provision "strips federal courts of jurisdiction to decide legal and factual questions arising from an alien's removal in any other context, including on a petition for a writ of habeas corpus." *Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020).  It has been described as a "zipper clause," with a purpose to "consolidate 'judicial review' of immigration proceedings into one action in the court of appeals."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 313 (2001).

Here, the application of § 1252(b)(9) to petitioner's claim raises two issues:  first, whether the statute applies in this instance; and second, if it does apply, whether the statute is unconstitutional as applied under the Suspension Clause of the United States Constitution.  U.S. Const. art. I, § 9, cl. 2.

"The words 'arising from' [in § 1252(b)(9)] do not lend themselves to precise application . . . [T]hose words are not infinitely elastic . . . . [They] cannot be read to swallow all claims that might somehow touch upon, or be traced to, the government's efforts to remove an

alien." *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 10 (1st Cir. 2007) (internal citations omitted).  To fall within the ambit of § 1252(b)(9), a claim must have "more than a weak or tenuous connection to a triggering event." *Id.* Correspondingly, the district courts have jurisdiction over claims that are "independent of, or wholly collateral to, the removal process." *Id.* at 11.

In *Zaoui v. Horgan*, another judge in this District determined that it lacked jurisdiction to decide whether a conviction was sufficiently final to support detention under § 1226(c) because such a claim was "equally a challenge to—and by no means independent of—his removability." 2013 WL 5615913, at *1 (D. Mass. Aug. 23, 2013).  Here, petitioner's claim that his convictions do not subject him to mandatory detention under 8 U.S.C. § 1226(c) are likewise, in substance, a challenge to his removability.  Petitioner argues that "[n]one of his convictions render him removable under 8 U.S.C. § 1227(a)(2)(A)(ii)-(iii) and (a)(2)(B)(i), and therefore he is not subject to mandatory detention under 8 U.S.C. § 1226(c)."  (Pet. ¶ 26).  Resolving the question of mandatory detention therefore requires adjudicating petitioner's removability.

Petitioner contends that § 1252(b)(9) is ambiguous as to whether a challenge to mandatory detention is a claim "arising from" a removal action.  He further contends that interpreting § 1252(b)(9) to bar the illegal detention claim would violate the Suspension Clause. He therefore suggests that the Court should resolve this purported ambiguity by applying the canon of constitutional avoidance.

"[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems."  *St. Cyr*, 533 U.S. at 299-300 (internal citations omitted).  To apply the canon of constitutional avoidance, the alternative interpretation

must be "fairly possible."

Where, as here, the questions of law and fact are the same for the questions of removability and mandatory detention, an alternative interpretation of § 1252(b)(9) is not fairly possible.[2]  Furthermore, the authorities relied upon by petitioner do not demonstrate the fair possibility of an alternative interpretation.

First, petitioner cites *I.N.S. v. St. Cyr*, where the Supreme Court found that § 1252(b)(9) did not "clearly apply to actions brought pursuant to the general habeas statute" because the term "judicial review" did not encompass habeas relief.  533 U.S. at 313-14.  However, the ambiguity found by the Supreme Court in *St. Cyr* no longer exists.  Section 1252(b)(9) was amended in 2005 by the REAL ID Act to expressly prohibit the exercise of jurisdiction over petitions for habeas corpus.  H.R. 1268, 109th Congress (2005).

Second, petitioner relies on *Jennings v. Rodriguez*, where the Supreme Court found that the district court had jurisdiction over a habeas petition alleging entitlement to a bond hearing.  138 S. Ct. at 839-40.  However, the plurality in *Jennings* noted specifically that the respondents

---

[2] As to the question of removability, 8 U.S.C. § 1227 states that "[a]ny alien . . . in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the classes of deportable aliens."  Those classes include:

Multiple criminal convictions (§ 1227(a)(2)(A)(ii)):  "Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct"

Aggravated felony (§ 1227(a)(2)(A)(iii)):  "Any alien who is convicted of an aggravated felony at any time after admission"

Controlled substance offenses (§ 1227(a)(2)(B)(i)):  "Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State . . . relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana"

As to the question of mandatory detention, 8 U.S.C. § 1226(c) states that "[t]he Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title . . ."

in that case were "*not* challenging the decision to detain them in the first place." *Id*. at 841 (emphasis added). Petitioner suggests the "decision" refers to the exercise of prosecutorial discretion, not the detention decision. But that reading misses the point that § 1252(b)(9) prohibits the exercise of jurisdiction when the legal questions regarding mandatory detention and removability are the same. *See id.* at n.3; *Nielsen v. Preap*, 139 S. Ct. 954, 962 (2019) (distinguishing challenges to the "decision to detain them in the first place . . . as opposed to the decision to deny them bond hearings"); *Aguayo v. Martinez*, 2020 WL 2395638, at *4-5 (D. Colo. May 12, 2020) (holding that court lacked jurisdiction to decide petitioner's claim that he was improperly placed in mandatory detention under § 1226(c) for having committed a crime of moral turpitude because he was challenging "the decision to detain [him] in the first place").

Third, petitioner contends that the Supreme Court's decision in *Nielsen* likewise applies in this case. 139 S. Ct. at 960-63. However, the habeas petitioners there were challenging the applicability of § 1226(c) on the ground that they were not immediately arrested after release from criminal custody. 139 S. Ct. at 961. Here, however, both the merits of petitioner's claim for release and the question of petitioner's removability are "conditioned on a determination of deportability." *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 467 (D. Mass. 2010) (holding that "applicability of the mandatory detention statute to [petitioner's] offense, unlike questions regarding the length of detention, is not independent of removal").[3]

Finally, petitioner argues that his claim challenging mandatory detention is

---

[3] Petitioner challenges the persuasiveness of *Flores-Powell*—and correspondingly *Zaoui*—on this point, observing that an offense can serve as the predicate for mandatory detention even if DHS does not exercise its discretion to "lodge a charge" for deportation based on the offense. *See In Re Kotliar*, 24 I. & N. Dec. 124, 126 (BIA 2007). But this distinction does not apply when, as here, the offenses supporting the application of § 1226(c) are the same as the charges for removal. *Cf. Vasquez Cruz v. Barr*, 2019 WL 6327576, at *3 (N.D. Cal. Nov. 26, 2019) (finding jurisdiction where the basis for mandatory detention "is not even the basis on which [petitioner] is being charged as removable.").

"independent" of the removal process, and that § 1252(b)(9), as interpreted in *Aguilar*, therefore does not bar his claim.  While *Aguilar* held that "district courts retain jurisdiction over challenges to the legality of detention," the First Circuit made clear that this is only where "detention claims are 'independent of challenges to removal orders.'"  *Aguilar*, 510 F.3d at 11 (quoting H.R. CONF. REP. 109-72, 175, *as reprinted in* 2005 U.S.C.C.A.N. 240, 300).  Again, the questions of law and fact raised by petitioner's claim challenging the application of the mandatory detention statute arise from the removal process, and § 1252(b)(9) unambiguously bars the exercise of jurisdiction over that claim.  *Cf. Gicharu,* 983 F.3d at 17 (noting that petitioner's claims "could have been pursued before the BIA, which refutes any notion that his claims are independent of, or collateral to, the removal process") (internal quotation marks and citations omitted).[4]

## 2. **Suspension Clause**

Because the Court finds that § 1252(b)(9) unambiguously precludes jurisdiction, it must next consider whether that interpretation of § 1252(b)(9) violates the Suspension Clause.  The Suspension Clause guarantees that the "Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."  U.S. Const. art. I, § 9, cl. 2.  "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

The Suspension Clause "unquestionably requires some judicial intervention in deportation cases."  *St. Cyr*, 533 U.S. at 290.  Nevertheless, "Congress has wide latitude in choosing which remedy or remedies are appropriate for the violation of a particular constitutional right . . . [and] possesses the power to regulate the jurisdiction of the lower federal

---

[4] Petitioner also addresses the question of whether exhaustion is required in this context, although exhaustion was not raised by respondent.  (Pet. Reply at 8-9).  Because the Court finds that § 1252(b)(9) unambiguously precludes jurisdiction, it need not address the question of exhaustion.  *Cf. Zaoui*, 2013 WL 5615913, at *1 n.2 (suggesting exhaustion as an alternative holding).

courts." *Aguilar*, 510 F.3d at 17. "[T]he substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus." *Swain v. Pressley*, 430 U.S. 372, 381 (1977). However, the Suspension Clause is violated where habeas relief is foreclosed and alternative remedies are inadequate substitutes. *Boumediene v. Bush*, 553 U.S. 723, 771-72 (2008).[5]

By its terms, § 1252(b)(9) forecloses habeas relief here. The question, therefore, is whether the alternative remedies provided to review the mandatory detention determination under § 1226(c) are adequate substitutes for habeas corpus.[6] Mandatory detention under § 1226(c) may be challenged in a *Joseph* hearing. *See Preap*, 139 S. Ct. at 971 n.8.[7] An adverse decision in the *Joseph* hearing may be appealed to the BIA. 8 C.F.R. § 1236.1(d)(3); *see Flores-Powell*, 677 F. Supp. 2d at 462. Furthermore, this court has jurisdiction to address whether the length of petitioner's detention comports with due process. *See Zaoui*, 2013 WL 5615913, at *1 (stating that "[t]his court does have jurisdiction, however, to review the length of detention for a potential due process violation.").

Here, petitioner has filed an appeal of the IJ's decision to the BIA, arguing that he is not

---

[5] *Boumediene* established a two-part framework to analyze potential violations of the Suspension Clause. First, the court must determine whether a habeas petitioner is precluded from invoking the Suspension Clause because of some attribute of the petitioner or the circumstances surrounding his detention or removal. *Boumediene*, 553 U.S. at 739. Second, the court must consider whether the alternative remedies available are inadequate substitutes for habeas corpus. *Id.* at 771.

[6] Neither party briefed the question of adequate substitutes, although it arose (briefly) at oral argument. Because petitioner raised the question of the constitutionality of § 1252(b)(9) as applied under the Suspension Clause, the Court nonetheless reaches the question here.

[7] Elsewhere in his brief, petitioner raises in a footnote that his *Joseph* hearing may have occurred under a standard that the Third Circuit later determined to be an improper standard of proof. (Pet. ¶ 35 n.6); *see Gayle v. Warden Monmouth Cty. Corr. Inst.*, 12 F.4th 321, 326 (3d Cir. 2021) (holding that "the Government has the burden to establish the applicability of § 1226(c) by a preponderance of evidence" in *Joseph* hearings). In any event, the remaining process established in § 1252 to appeal a removal order to the BIA, and subsequently to the circuit court, provides an adequate substitute to habeas relief. *See Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1072 (2020) (noting that the amendments to § 1252 were designed to provide an "adequate and effective" alternative to habeas corpus).

removable because, among other things, his prior convictions are not qualifying crimes.  He can

petition for review of an adverse decision of the BIA to the Court of Appeals.  8 U.S.C.

§ 1252(b)(2).  That procedure for review of a removal order is "designed to provide an adequate

and effective alternative to habeas corpus."  *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1072

(2020) (citations and internal quotations omitted).  Under the circumstances presented here, it

provides an adequate substitute for adjudicating the same legal issues raised in the petition.  *See*

8 U.S.C. § 1227(a)(2)(A)(ii)-(iii), (a)(2)(B)(i); 8 U.S.C. § 1226(c).  Other courts have reached the

same conclusion under similar circumstances.  *See Duncan v. Kavanagh*, 439 F. Supp. 3d 576,

587 (D. Md. 2020) (holding that petition for review process "constitutes an adequate substitute to

habeas review" where it addresses the same legal questions as a challenge to detention); *P.L. v.*

*U.S. Immigr. & Customs Enf't*, 2019 WL 2568648, at *3 (S.D.N.Y. June 21, 2019) (finding that

Suspension Clause would not be violated even if plaintiffs were challenging their detention

because they "still have the ability to bring their claims in a BIA proceeding or to file a petition

for review").[8]

   In summary, § 1252(b)(9) precludes jurisdiction over the application of § 1226(c) to

petitioner, and the statute is constitutional as applied here.[9]

### B.   Continued Detention Without a Bond Hearing

   Petitioner next contends that his detention without a bond hearing has become

---

[8] Conversely, courts finding violations of the Suspension Clause were confronted with an obvious lack of adequate substitutes.  For example, in *Compere v. Nielsen*, the court found that the Suspension Clause would be violated when petitioner had a right to file a motion to reopen his case with the BIA, but it would be impossible for him to litigate his motion to reopen after he was deported to Haiti.  358 F. Supp. 3d 170, 178-81 (D.N.H. 2019); *see also Joshua M. v. Barr*, 439 F. Supp. 3d 632, 675-77 (E.D. Va. 2020) (finding no adequate substitute for habeas where petitioner would be unable to litigate motion to reopen upon returning to Honduras due to dangerous conditions).

[9] Because § 1252(b)(9) precludes jurisdiction to decide whether petitioner was improperly detained under § 1226(c), the Court does not consider whether petitioner is subject instead to § 1226(a) or entitled to a bond hearing under that statute.

unreasonably prolonged in violation of the Fifth Amendment.

Section 1226(c) does not explicitly provide a right to a bond hearing.  However, mandatory detention under § 1226(c) without a bond hearing may violate due process "when it becomes unreasonably prolonged in relation to its purpose in ensuring the removal of deportable criminal aliens."  *Reid v. Donelan*, 390 F. Supp. 3d 201, 215 (D. Mass. 2019).  An alien subject to mandatory detention under § 1226(c) may bring a petition for habeas corpus if he believes his detention is unreasonably prolonged in violation of his due-process rights.  *Id.* at 209-10.  "[D]ue process applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Hernandez-Lara v. Lyons*, 10 F.4th 19, 29 (1st Cir. 2021) (internal citations and quotation marks omitted).

The procedural history of this case intersects in complicated ways with the *Reid* case. That case began in 2014 when Judge Ponsor of this District granted a habeas petition, deeming petitioner's mandatory detention without an individualized bond hearing to be unreasonable. *Reid v. Donelan*, 991 F. Supp. 2d 275, 276-78 (D. Mass. 2014) ("*Reid I*").  The court held that § 1226(c) should be read as requiring a bond hearing after no more than six months of detention and, that in any event, Reid's unique circumstances required such a hearing.  *Id.* at 279, 281. Reid subsequently filed a motion for class certification, which was granted.  *Reid v. Donelan*, 297 F.R.D. 185 (D. Mass. 2014).

On appeal, the First Circuit reversed the bright-line rule but affirmed the alternative holding that § 1226(c) required an individualized bond hearing for Reid.  *Reid v. Donelan*, 819 F.3d 486, 496, 501 (1st Cir. 2016), *withdrawn*, 2018 WL 4000993 (1st Cir. May 11, 2018) ("*Reid II*").  After the Supreme Court issued its decision in *Jennings v. Rodriguez*, the First Circuit withdrew its 2016 opinion, vacated the judgment, and remanded for reconsideration of

the class-certification order.  *Reid v. Donelan*, 2018 WL 4000993 (1st Cir. May 11, 2018).

However, it affirmed the district court's judgment as to Reid himself.  *Id.*

  Following remand, the case was reassigned to Judge Saris, who determined that

continued certification of the class was proper based on the common question of "whether the

Due Process Clause or Excessive Bail Clause requires that they at least have the chance to plead

their case after six months at an individualized bond or reasonableness hearing."  *Reid v.

Donelan*, 390 F. Supp. 3d 201, 211 (D. Mass. 2019) ("*Reid III*").  The class included "[a]ll

individuals who are or will be detained within the Commonwealth of Massachusetts or the State

of New Hampshire pursuant to 8 U.S.C. § 1226(c) for over six months and have not been

afforded an individualized bond or reasonableness hearing."  *Id.* at 209.  After cross-motions for

summary judgment, the court held that "mandatory detention under § 1226(c) without a bond

hearing violates the Due Process Clause when it becomes unreasonably prolonged in relation to

its purpose in ensuring the removal of deportable criminal aliens."  *Id.* at 215.  It further held that

to determine when mandatory detention becomes unreasonably prolonged, the following

nonexclusive factors should be considered:

> the total length of the detention; the foreseeability of proceedings concluding in
> the near future (or the likely duration of future detention); the period of the
> detention compared to the criminal sentence; the promptness (or delay) of the
> immigration authorities or the detainee; and the likelihood that the proceedings
> will culminate in a final removal order.

*Id.* at 219 (quoting *Reid II*, 819 F.3d at 500).  The court also concluded that "detention is likely

to be unreasonable if it lasts for more than one year during removal proceedings before the

agency, excluding any delays due to the alien's dilatory tactics."  *Id.*

  However, earlier this year, the First Circuit affirmed in part, vacated in part, and

remanded *Reid*.  *Reid v. Donelan*, 17 F.4th 1, 12 (1st Cir. 2021) ("*Reid IV*").[10]  It held that the district court impermissibly issued declaratory and injunctive relief, and that the court erred in using the "class as a bootstrap to then adjudicate, on a class-wide basis, claims that hinge on the individual circumstances of each class member."  *Id.* at 9-12.  At the end of the opinion, the court clarified that "[n]othing in this opinion precludes any class member from pursuing a claim that he or she is entitled to a bond hearing or to release based on his or her individual circumstances." *Id.* at 12.

The First Circuit then granted an extension for petitioners in *Reid IV* to file a petition for rehearing.  As a result, the formal mandate will not issue until at least March 10, 2022.

This matter was assigned to the undersigned judge, not to Judge Saris.  As a technical matter, however, because the mandate has not issued, the class certification order remains in place, and Alphonse is a member of the class.  Nonetheless, under the circumstances, the Court will not transfer the matter to Judge Saris, but will resolve the matter on the merits.  Furthermore, and in any event, the parties do not dispute that the *Reid* factors are applicable here.

### 1.    Length of Detention

The most important factor in determining whether an alien's mandatory detention without a bond hearing is unreasonable is the total length of the detention.  *Reid III,* 390 F. Supp. 3d at 219.  Although a one-year period of detention is not a "bright line," a detention is "likely to be unreasonable if it lasts for more than one year during removal proceedings before the agency, excluding any delays due to the alien's dilatory tactics."  *Id.* at 219-20.

---

[10] The First Circuit affirmed only as to the "judgment against the class rejecting the claim that persons detained for six months under section 1226(c) are automatically entitled to a hearing before an IJ that might lead to their release on bond pending the conclusion of removal proceedings."  *Reid IV*, 17 F.4th at 12.

Here, petitioner has been detained by ICE since November 30, 2020.[11]  As of the date of this opinion, petitioner will have been detained for nearly fourteen months.  He has been granted three extensions of time related to his proceedings, including a ten-day continuance to secure counsel; a 35-day extension to secure counsel; and a three-week extension to file a supporting brief.[12]  Those extensions total more than nine weeks, which is a substantial portion of the period of delay.  Nonetheless, his conduct in requesting those extensions was not unduly dilatory.  *See De La Cruz Hernandez v. Moniz*, 2021 WL 3174915, at *3 (D. Mass. May 24, 2021) (finding that two-month continuance was not dilatory); *Campbell v. Moniz*, 2020 WL 1953611, at *3 (D. Mass. Apr. 23, 2020) (finding that petitioner was not dilatory even though "the case was reset for short periods of time to allow Petitioner to obtain counsel and for his attorney to prepare his applications for relief").  Those delays also occurred in the context of the ongoing COVID-19 pandemic.  *See Dos Santos v. Moniz*, 2021 WL 3361882, at *3 (D. Mass. May 18, 2021) (reasoning that at least some portion of delay, including continuances exceeding four months, "was likely inevitable due to the impact of the COVID-19 pandemic on the courts"); *De La Cruz Hernandez*, 2021 WL 3174915, at *3.

Petitioner's appeal of the removal order to the BIA is also not a dilatory tactic.  *See Reid II*, 819 F.3d at 500 n.4 (stating that "there is a difference between 'dilatory tactics' and the exercise of an alien's rights to appeal"); *Decarvalho v. Souza*, 2020 WL 3498270, at *2-3 (D. Mass. June 29, 2020) (finding that petitioner did not engage in dilatory tactics when he filed two appeals with BIA); *Da Graca v. Souza*, 2020 WL 2616263, at *3 (D. Mass. May 22, 2020)

---

[11] Petitioner's brief states that he has been in ICE custody since November 30, 2021, which appears to be a typographical error.  (Pet. ¶ 42).

[12] Petitioner notes that after the 35-day continuance was granted, the proceedings actually resumed 45 days later.  (Pet. ¶ 48).  This delay appears to be attributable to a court closure due to weather conditions.  (Marfissi Dec. ¶ 16).

(finding that petitioner's BIA appeal was not dilatory).

In sum, a portion of the delay was at petitioner's request and another was due to petitioner's exercise of his appellate rights.  Nonetheless, his detention has exceeded one year, and is therefore presumptively unreasonable according to *Reid*.  However, that factor alone is not dispositive.  Habeas relief may be denied when the remaining factors favor the government.  *See Dos Santos*, 2021 WL 3361882, at *4 (finding that petitioner was not entitled to bond hearing notwithstanding detention exceeding sixteen months).  Thus, the Court will consider those factors.

## 2.     Foreseeability of Proceedings Concluding in Near Future

The second *Reid* factor is whether it is foreseeable that proceedings will conclude in the near future.  Here, petitioner appealed his removal order and submitted a supporting brief on August 5, 2021, after he was granted a three-week extension.  The government has also filed its brief in the matter.  At this stage, it is foreseeable that the BIA will issue a decision on petitioner's appeal in the near future.  *See Lewis v. Souza*, 2020 WL 2543156, at *3 (D. Mass. May 19, 2020) (stating that when "petitioner's appeal is at an advanced stage, with briefing submitted" it weighs against finding of unreasonableness); *see also Dos Santos*, 2021 WL 3361882, at *4 (noting that fully-briefed appeal pending before BIA for three months was "nearing resolution").[13]

In short, the BIA appeal is fully briefed, and it is readily foreseeable that proceedings will

---

[13] The timing and outcome of any appeal of any adverse decision by the BIA to the Court of Appeals is of course speculative.  *Reid III* explicitly did not take a position on this issue.  390 F. Supp. 3d at 219 n.4 (noting that court did not take position on issue of whether "the period of time while a petition for review with a circuit court is pending should factor into the reasonableness analysis").

Petitioner also contends that he intends to apply for a U Visa, which could delay proceedings further.  However, the record does not show that he has actually applied for such a visa, so any effects on the second *Reid* factor appear to be hypothetical.

conclude in the near future.  The second factor therefore weighs in favor of the government.

### 3.        Period of Detention Compared to Criminal Sentence

The third factor compares the length of detention with the length of petitioner's criminal

sentence.  The length of detention by immigration authorities may become unreasonable when it

is grossly disproportionate to the length of the detainee's criminal sentence.  *See Lewis*, 2020

WL 2543156, at *3 (finding that nine and a half months in detention was not "grossly

disproportionate to his six-month term of incarceration, particularly in light of the multiple

suspended sentences in his record"); *Campbell*, 2020 WL 2129594, at *5-6 (holding that

immigration detentions exceeding criminal sentences by up to six months "are not so grossly out

of proportion as to outweigh the other relevant factors").[14]

Here, petitioner's criminal sentence—which was seven years, of which two years and ten

months were served—significantly exceeds his period of administrative detention.  The Court is

therefore unpersuaded that the length of petitioner's detention is grossly disproportionate to his

criminal sentence.

### 4.        Promptness of Immigration Authorities and Detainee

The fourth factor is the promptness or delay of the immigration authorities and the

detainee.  Here, petitioner's proceedings have moved without excessive delay.  The government

requested a two-week continuance for briefing before the IJ on February 10, 2021, to respond to

the possibility raised by petitioner that he was a United States citizen.[15]  The government has not

---

[14] "[T]his factor of the *Reid* analysis compares the period of ICE detention with the actual time spen[t] in incarceration as a result of the underlying criminal conviction, not the length of a related suspended sentence."  *Da Graca*, 2020 WL 2616263, at *3 n.1.

[15] Petitioner has suggested that this continuance was due to DHS listing the wrong statute for one of the charges of removability, (Pet. ¶ 48), but during oral argument, respondent contested this characterization.  The transcript for the February 10, 2021, hearing demonstrates that DHS orally corrected an erroneous statute in the Notice to Appear, but received the continuance "to brief [citizenship] issues in this case."  (Pet. Ex. 14 at 14).

otherwise sought any continuances or extensions during the pendency of the immigration proceedings, and as noted, other delays have been due to continuances requested by petitioner.[16] The government added two additional charges of removability on February 24, 2021, several months after the Notice to Appear was issued, but this appears to have caused no additional delay and the IJ ultimately sustained all three charges of removability including the charge originally included. There is no indication that immigration proceedings have simply languished on the docket.

Although the Court is mindful that "detention can still be unreasonably prolonged even where the government did not delay proceedings," *see Neziri v. Johnson*, 187 F. Supp. 3d 211, 216 (D. Mass. 2016), it is nonetheless significant that the government appears to have been reasonably diligent here.

### 5.  Likelihood That Proceedings Will Culminate in Final Removal Order

The final *Reid* factor considers whether it is likely that proceedings will culminate in a final removal order. Courts generally consider the prior ruling of the immigration judge when assessing the likelihood of final removal. *See Bonnet v. Smith*, 2019 WL 11029146, at *4 (D. Mass. July 23, 2019) (reasoning that "there is a significant likelihood the proceedings will culminate in a final removal order against Petitioner since the IJ has already rejected his CAT application"); *Goncalves v. Moniz*, 2020 WL 2198526, at *3 (D. Mass. May 6, 2020) (stating that "the Court cannot say that Petitioner is likely to succeed on appeal. The IJ ordered Petitioner's deportation after careful consideration of the positive and negative equities in Petitioner's case"); *Tahil v. Moniz*, 2020 WL 2560967, at *3 (D. Mass. May 20, 2020)

---

[16] Petitioner attributes the 45-day delay resulting from his second requested continuance to the immigration judge, apparently because he had no way of knowing that the IJ would grant him a continuance that long. However, that is not properly attributable to the government because the continuance was at petitioner's request.

(explaining that IJ's decision was "Court's best guide in determining the likelihood that the proceedings will conclude in a final removal order"); *Lewis*, 2020 WL 2543156, at *3 (same).

Here, the immigration judge sustained the government's charges for removal in a 14-page written opinion on March 24, 2021, after a hearing.  On May 12, 2021, the immigration judge, in a 15-page written opinion, denied petitioner's application for asylum, application for withholding of removal under the INA, and application for withholding of removal and deferral of removal under CAT, and ordered his removal from the United States.  Petitioner filed a notice of appeal to the BIA, arguing that the immigration judge erred in finding that his conviction constitutes both a controlled-substance offense and an illicit trafficking aggravated felony and denying his application under CAT.  He also requested that the BIA consider changed conditions in Haiti and requested remand on the grounds that new law affected his claim of torture.

Petitioner contends that the strength of his appeal makes a final removal order unlikely.[17] The government contests these arguments, pointing to the decisions of the immigration judge. Under the circumstances, it is prudent to look to the immigration judge's decision as the "best guide in determining the likelihood that the proceedings will conclude in a final removal order." *Tahil*, 2020 WL 2560967, at *3.  While those decisions are of course not conclusive, based on a review of those opinions, it appears that the final *Reid* factor weighs in favor of the government because it is likely that these proceedings will culminate in a final removal order.

### 6.    Additional Factors

Beyond the *Reid* factors, petitioner urges the court to consider two additional factors that make his continued detention unreasonable:  first, the undue hardship that his detention poses on

---

[17] Petitioner also contends that his likelihood of relief through a U Visa weigh in his favor on this factor. (Pet. ¶ 50).  However, petitioner is currently only in the process of applying for a U Visa, (*id.* at ¶ 44), and does not allege a "bona fide" determination of his U Visa petition.  *See V.U.C. v. United States Citizenship & Immigr. Servs.*, 2021 WL 3667712, at *1 n.1. (D. Mass. Aug. 18, 2021).

his family, and second, the conditions of his detention at Plymouth.

Petitioner first contends that his detention places an undue hardship on his family. Whether family hardship may be properly considered is unclear; it is likely that all, or virtually all, immigration detention orders place a burden on the family of the alien.  That burden alone is insufficient to merit a finding of unreasonableness.  *See Aguilar*, 510 F.3d at 22 (stating that "[a]ny interference with the right to family integrity . . . was incidental to the government's legitimate interest in effectuating detentions pending the removal of persons illegally in the country.").

Petitioner's second argument is that the conditions of his detention at Plymouth are more akin to criminal incarceration than civil detention because he is held in the same facility as pretrial detainees and convicted defendants and subject to similar standards and rules.  Again, it is unclear whether this court may properly consider the conditions of confinement.  In any event, petitioner has not demonstrated that the conditions of confinement merit a finding of unreasonableness.  *See Martinez Lopez v. Moniz*, 2021 WL 6066440, at *8 (D. Mass. Dec. 22, 2021) (noting that at Plymouth County Correctional Facility, "immigration detainees are housed separately from pretrial detainees and convicted prisoners and receive certain extra privileges, amenities, and services").

### C.   <u>Conclusion</u>

Although petitioner's detention has exceeded one year, the other factors, taken as a whole, favor the government and are sufficient to overcome any presumption of unreasonableness.  *See Dos Santos*, 2021 WL 3361882, at *3-4 (holding that petitioner was not entitled to bond hearing despite detention exceeding sixteen months because his BIA appeal was "fully briefed," his time spent in detention was not "grossly disproportionate" to period of incarceration, government had not "unreasonably delayed" proceedings, and IJ denied

application for withholding of removal, which was "best guide available" about likelihood of final removal order).  Because petitioner's continued detention has not been unreasonably prolonged in violation of due process, he is not entitled to a bond hearing at this time.[18]  That decision is of course subject to reconsideration should circumstances materially change.

## IV.   <u>Conclusion</u>

For the foregoing reasons, the petition for writ of habeas corpus is DENIED without prejudice.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated: January 31, 2022

---

[18] The Court therefore does not reach petitioner's claim for procedural protections at the requested bond hearing.