**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| **ANDERSON ALPHONSE,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **21-11844-FDS** |
| ) | |
| **ANTONE MONIZ,** ) | |
| ) | |
| **Respondent.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER ON**
**<u>PETITION FOR WRIT OF HABEAS CORPUS</u>**

SAYLOR, C.J.

This is a petition for a writ of habeas corpus.  Petitioner Anderson Alphonse is a detainee

of Immigration and Customs Enforcement who is currently held at the Plymouth County

Correctional Facility.  Respondent Antone Moniz is the current superintendent of that facility.

Alphonse is a legal permanent resident who has resided in the United States since 1988.

In 2018, he was convicted of several state-law drug offenses.  After serving two years and ten

months of a seven-year sentence, he was placed on parole and transferred to ICE custody.  ICE

made an initial custody determination to detain him under 8 U.S.C. § 1226(c).  That

determination was upheld by an immigration judge, and he has been in mandatory detention

since then.

Alphonse seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that he has

been unreasonably detained without a bond hearing in violation of the Fifth Amendment.  For

the following reasons, the petition will be granted in part.

I.     **Background**

A.     **Factual Background**

The facts are drawn from the petition for habeas corpus.

Anderson Alphonse is a 40-year-old legal permanent resident of the United States.  (Pet.

¶ 1).  His country of origin is Haiti.  (*Id.*).

According to Alphonse, when he was approximately six years old, his family fled Haiti to

the United States after allegedly being persecuted by a paramilitary group known popularly as

the Tonton Macoute.  (*Id.* ¶¶ 12-13).  Since 1988, he has resided in the United States.  He has

two children who are both U.S. citizens.  (*Id.* ¶ 11).

In 2006, Alphonse was shot, leaving debris in his neck that has caused nerve damage.

(*Id.* ¶ 16).  According to Alphonse, he reported the shooter to the police and fully cooperated

throughout the police investigation.  (*Id.*).  He contends that he is currently in the process of

applying for a U Visa based on his cooperation with the police.  (*Id.* ¶ 24).

In 2012, Alphonse was placed in removal proceedings and charged as deportable as a

legal permanent resident convicted of an aggravated felony, controlled-substance offense, and

firearms offense.  (*Id.* ¶ 17).  However, an immigration judge subsequently cancelled his

removal.  (*Id.*).  The details of those convictions are not in the record, and it appears that the

proceeding is entirely separate from the present matter.

On June 14, 2016, Alphonse was charged in state court in New Jersey with two counts

related to possession of controlled dangerous substances, two counts related to possession with

intent to distribute a controlled dangerous substance, and one count of possession with intent to

use drug paraphernalia.  (Pet. Ex. 11 at 43).  He pleaded not guilty.  (*Id.*).  On January 29, 2018,

he was convicted under N.J. Stat. Ann. §§ 2C:35-10A(1) and 2C:35-5B(3) for possession of a

controlled dangerous substance and possession of a controlled dangerous substance with intent to

distribute.  (Pet. Ex. 11 at 43; Pet. ¶ 18).  He subsequently received a sentence of seven years in state prison and ultimately served two years and ten months.  (Pet. Ex. 11 at 43).

Those 2018 criminal convictions triggered ICE's initial custody determination under 8 U.S.C. § 1226(c).  (Pet. ¶ 20; Pet. Ex. 2 at 1).  Petitioner is currently detained at the Plymouth County House of Corrections.  (Pet. ¶ 6).

### B.   Procedural Background

#### 1.   Immigration Proceedings

On November 30, 2020, DHS served Alphonse a Notice to Appear, alleging that he was removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for having committed two crimes of moral turpitude.  (Pet. Ex. 2 at 1-2).  On that same day, he was taken into mandatory detention pursuant to 8 U.S.C. § 1226(c).  (Pet. ¶ 20; Pet. Exs. 2; 3).  Also on that same day, he requested a *Joseph* hearing to review his custody determination.  (Pet. ¶ 20; Pet. Ex. 5).[1]  On December 18, 2020, an immigration judge determined he was properly detained under § 1226(c).  (Pet. Ex. 7).  Alphonse did not appeal that determination.  (Marfissi Decl. ¶ 13).

Alphonse appeared *pro se* before an immigration judge in removal proceedings on December 18, 2020.  (Pet. ¶ 22; Pet. Ex. 14 at 2).  He received a ten-day continuance to secure counsel.  (Pet. ¶ 22; Pet. Ex. 14 at 4-5).  He appeared *pro se* again before an immigration judge on December 28, 2020.  (Pet. ¶ 22; Pet. Ex. 14 at 7).  At his second appearance, he told the immigration judge that he had obtained counsel but that person was unable to appear at that time.  (Pet. ¶ 22; Pet. Ex. 14 at 7).  The immigration judge granted him a 35-day extension, but proceedings actually resumed 45 days later.  (Pet. ¶ 22; *see* Pet. Ex. 14 at 8, 10).

---

[1] A *Joseph* hearing permits a detainee to "raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category."  *Demore v. Kim*, 538 U.S. 510, 514 (2003) (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002) and *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)).

On January 22, 2021, DHS conducted a custody determination as to Alphonse pursuant to the nationwide injunction in *Fraihat v. U.S. Immigr. & Customs Enf't,* 445 F. Supp. 3d 709 (C.D. Cal. 2020)*, rev'd and remanded,* 16 F.4th 613 (9th Cir. 2021).  (Pet. ¶ 21).  DHS concluded that he would remain detained in light of his risk factors and because he was a threat to public safety. (*Id.*).

At removal proceedings on February 10, 2021, DHS orally corrected an incorrect reference to a New Jersey statute that was included in the Notice to Appear.  (Pet. Ex. 14 at 12-13).  DHS was also given two weeks to brief the issue of derivative citizenship.  (Pet. Ex. 14 at 14).  Alphonse denied all charges of removability and moved to terminate proceedings through counsel.  (Pet. ¶ 23).  On February 24, 2021, DHS submitted its brief in support of removability. (Pet. Ex. 12 at 4).  It simultaneously lodged two additional charges of removability, alleging that his 2018 conviction for possession of a controlled dangerous substance with intent to distribute qualified as both an aggravated felony rendering him removable under § 1227(a)(2)(A)(iii) and as a controlled-substance offense rendering him removable under § 1227(a)(2)(B).  (*Id.*).

On March 24, 2021, the immigration judge denied Alphonse's motion to terminate the proceedings and sustained all three charges of removability.  (Pet. ¶ 23).  On May 12, 2021, the immigration judge denied his application for deferral of removal under the Convention Against Torture and ordered him removed to Haiti.  (*Id.*).

Alphonse filed a notice of appeal of the immigration judge's decision to the Board of Immigration Appeals.  (Pet. ¶ 23).  On June 24, 2021, the BIA issued a briefing schedule.  (*Id.*). On August 5, 2021, Alphonse submitted his supporting brief after a three-week extension granted by the BIA.  (*Id.*).  In that brief, he argued that the IJ erred in finding that his convictions constituted both a controlled-substance offense and an aggravated felony; that the IJ erred in

denying his claim under the CAT; that the BIA should consider changed country conditions in Haiti; and that new law affected his claim and required remand based on his relationship to his mother and uncle.  (*See* Pet. Ex. 15).  The government also filed its brief.  (Marfissi Decl. ¶ 22).

On August 8, 2022, the BIA remanded the case to the immigration judge, finding that the immigration judge's decision did not contain sufficient findings or analysis for meaningful appellate review.  *Matter of Anderson Alphonse*, No. A041-584-763 (BIA Aug. 8, 2022).  The BIA rejected petitioner's other arguments.

## 2.   Habeas Proceedings

On November 12, 2021, Alphonse filed the present petition for a writ of habeas corpus.

On January 31, 2022, the Court issued an order dismissing the case.  The Court found that § 1252(b)(9) precluded jurisdiction over the application of § 1226(c) to Alphonse and that the statute was constitutional as applied.  The Court further found, using the factors outlined in *Reid v. Donelan*, 390 F. Supp. 3d 201 (D. Mass. 2019), that his detention was not unreasonably prolonged in violation of the Fifth Amendment.

On March 1, 2022, Alphonse appealed the Court's decision to the First Circuit.  On September 1, 2022, the First Circuit granted the parties' joint motion to remand in light of the intervening decision of the BIA on August 8, 2022.

On September 8, 2022, the Court granted a joint motion to expedite briefing by the parties, and the issue on remand is now fully briefed.  Alphonse and the United States agree that the only issue before the Court is whether, in light of the BIA decision, it should reconsider its earlier decision that Alphonse's detention was not unreasonably prolonged and order a bond hearing, and, if so, what burden of proof should apply at that bond hearing.

II.     **Petitioner's Continued Detention**

A.     **Legal Standard**

Title 8, U.S.C. § 1226 governs the apprehension and detention of aliens during removal

proceedings.  Although the government may generally release an alien on conditional parole or

bond while his removability decision is pending, § 1226(c) "carves out a statutory category of

aliens who may *not* be released under § 1226(a)." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837

(2018).  Pursuant to § 1226(c), the Attorney General is required to take into custody any alien

who is inadmissible or deportable based on a conviction for "certain crimes of moral turpitude,

controlled substance offenses, aggravated felonies, firearm offenses, or acts associated with

terrorism."  *Gordon v. Lynch*, 842 F.3d 66, 67 n.1 (1st Cir. 2016); *see* 8 U.S.C. § 1226(c).  The

Attorney General may release such an alien only if he decides "that release of the alien from

custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney

General that the alien will not pose a danger to the safety of other persons or of property and is

likely to appear for any scheduled proceeding."  8 U.S.C. § 1226(c)(2).

A district court may require a bond hearing if a petitioner can demonstrate that his

detention has been unreasonably prolonged in violation of his due-process rights.  Section

1226(c) does not explicitly provide a right to a bond hearing.  However, mandatory detention

under § 1226(c) without a bond hearing may violate due process "when it becomes unreasonably

prolonged in relation to its purpose in ensuring the removal of deportable criminal aliens."  *Reid*,

390 F. Supp. 3d at 215.  "[D]ue process applies to all 'persons' within the United States,

including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."

*Hernandez-Lara v. Lyons*, 10 F.4th 19, 29 (1st Cir. 2021) (internal citations and quotation marks

omitted).

*Reid* provides a five-factor test to determine whether a petitioner's detention is

6

unreasonably prolonged.  According to the most recent *Reid* opinion, courts may consider:

> the total length of the detention; the foreseeability of proceedings concluding in the near future (or the likely duration of future detention); the period of the detention compared to the criminal sentence; the promptness (or delay) of the immigration authorities or the detainee; and the likelihood that the proceedings will culminate in a final removal order.

*Reid*, 390 F. Supp. 3d at 219 (quoting *Reid v. Donelan*, 819 F.3d 486, 500 (1st Cir. 2021)).  The court also concluded that "detention is likely to be unreasonable if it lasts for more than one year during removal proceedings before the agency, excluding any delays due to the alien's dilatory tactics." *Id.*

As the government points out, the *Reid* factors are not binding on this Court.  In the most recent round of the *Reid* litigation, the First Circuit vacated the District Court's order issuing declaratory and injunctive relief on behalf of a class of detainees held under § 1226, including the portion of the order that described and applied the *Reid* factors.  *Reid v. Donelan*, 17 F.4th 1, 11 (1st Cir. 2021).  The First Circuit's decision, however, rested on the absence of "any plaintiff possessing any current or imminent stake in the resolution of assorted issues addressed in the court's declaratory and injunctive relief," not on the substantive correctness of the proposed standard.  *Id.*  Indeed, the court acknowledged the benefit of "clear standards for determining whether and when a section 1226(c) detainee need be released pending the conclusion of the detainee's removal proceedings" and suggested that such standards might arise from "agency regulations" or "common law rules of precedential force."  *Id.*

In the Court's view, the *Reid* factors provide a reasonable framework to assess whether continued detention under 1226(c) is reasonable.  The government urges the Court to look to "the individual circumstances of a noncitizen's case" to determine whether "his detention is no longer fairly attributable to the normal course of the removal process."  (Gov. Supp. at 5; 6).  But as the First Circuit explained in a since-withdrawn decision when it first articulated the *Reid* factors,

the factors are a non-exhaustive list that courts may use to measure whether the normal

presumptions, such as brevity and removability, have become "weaker or more attenuated."

*Reid*, 819 F.3d at 500.  Other factors may be relevant to the reasonableness analysis, but the *Reid*

factors are "guideposts" for analysis that will allow courts to consider common issues in 1226(c)

detention litigation.  *Id.*

> **B.**     **Analysis**

Petitioner contends that his detention without a bond hearing has become unreasonably

prolonged in violation of the Fifth Amendment.

> **1.**     **Length of Detention**

The most important factor in determining whether an alien's mandatory detention without

a bond hearing is unreasonable is the total length of the detention.  *Reid*, 390 F. Supp. 3d at 219.

Although a one-year period of detention is not a "bright line," detention is "likely to be

unreasonable if it lasts for more than one year during removal proceedings before the agency,

excluding any delays due to the alien's dilatory tactics."  *Id.* at 219-20.

Here, petitioner has been detained by ICE since November 30, 2020.  As of the date of

this opinion, petitioner will have been detained for nearly 22 months.  He has been granted three

extensions of time related to his proceedings, including a 10-day continuance to secure counsel;

a 35-day extension to secure counsel; and a 21-day extension to file a supporting brief.[2]  Those

extensions total more than nine weeks, which represent a substantial portion of the period of

delay.  Nonetheless, his conduct in requesting those extensions was not unduly dilatory.  *See De*

*La Cruz Hernandez v. Moniz*, 2021 WL 3174915, at *3 (D. Mass. May 24, 2021) (finding that

---

[2] Petitioner notes that after the 35-day continuance was granted, the proceedings actually resumed 45 days later.  (Pet. ¶ 48).  That delay appears to be attributable to a court closure due to weather conditions.  (Marfissi Dec. ¶ 16).

two-month continuance was not dilatory); *Campbell v. Moniz*, 2020 WL 1953611, at *3 (D.

Mass. Apr. 23, 2020) (finding that petitioner was not dilatory even though "the case was reset for

short periods of time to allow Petitioner to obtain counsel and for his attorney to prepare his

applications for relief").  Those delays also occurred in the context of the ongoing COVID-19

pandemic, which caused widespread delays throughout the justice system.  *See Dos Santos v.*

*Moniz*, 2021 WL 3361882, at *3 (D. Mass. May 18, 2021) (reasoning that at least some portion

of delay, including continuances exceeding four months, "was likely inevitable due to the impact

of the COVID-19 pandemic on the courts"); *De La Cruz Hernandez*, 2021 WL 3174915, at *3.

Furthermore, petitioner's appeal of the removal order to the BIA was not a dilatory tactic.

*See Reid*, 819 F.3d at 500 n.4 (stating that "there is a difference between 'dilatory tactics' and the

exercise of an alien's rights to appeal"); *Decarvalho v. Souza*, 2020 WL 3498270, at *2-3 (D.

Mass. June 29, 2020) (finding that petitioner did not engage in dilatory tactics when he filed two

appeals with BIA); *Da Graca v. Souza*, 2020 WL 2616263, at *3 (D. Mass. May 22, 2020)

(finding that petitioner's BIA appeal was not dilatory).

In sum, a portion of the delay was at petitioner's request and another was due to his

exercise of his appellate rights.  Nonetheless, his detention has exceeded one year, and is

therefore presumptively unreasonable according to *Reid*.  However, the length of detention alone

is not dispositive, and habeas relief may be denied when the remaining factors favor the

government.  *See Dos Santos*, 2021 WL 3361882, at *4 (finding that petitioner was not entitled

to bond hearing notwithstanding detention exceeding sixteen months).

### 2.      Foreseeability of Proceedings Concluding in Near Future

The second *Reid* factor is whether it is foreseeable that proceedings will conclude in the

near future.  The BIA's decision to remand petitioner's case will require the immigration judge

to make new findings of fact to resolve deficiencies in the earlier proceeding.  Petitioner has

indicated that if the immigration judge again rules against him, he will appeal to the BIA and if necessary to the First Circuit.  (Pet. Supp. at 5).[3]  Data cited in *Reid* indicates that the "median completion time for removal proceedings at the immigration court level over the last five years was around 40 days in non-appealed cases and three months in cases that were ultimately appealed to the BIA."  *Reid*, 390 F. Supp. 3d at 212.  Proceedings in this case may thus take months to conclude.

Petitioner also contends that he has applied for a U Visa, which could delay proceedings further.  In its earlier decision, the Court did not find support for that application in the record. In his briefing here, the petitioner has provided evidence that the United States Citizenship and Immigration Services has received his application for a U Visa.  (Pet. Supp., Ex. 2).  A U Visa is a type of immigration relief that USCIS may grant if it finds that the petitioner "has suffered substantial physical or mental abuse as a result of having been a victim of" certain qualifying criminal activity and has helped law enforcement officials investigate or prosecute that criminal activity.  8 U.S.C. § 1101(a)(15)(U).  A U-visa petitioner must also prove that he is admissible to the United States or be granted a waiver of inadmissibility.  8 U.S.C. § 1182(d)(3).  The Fourth and Seventh Circuits have concluded, for different reasons, that an immigration judge may grant such a waiver.  *Jimenez-Rodriguez v. Garland*, 996 F.3d 190, 200 (4th Cir. 2021); *Baez-Sanchez v. Sessions*, 872 F.3d 854, 856 (7th Cir. 2017).  For present purposes, it is sufficient to note that petitioner's U-Visa application will likely extend the proceedings in his case, possibly requiring presentation of additional evidence and interagency communication.  That reduces the likelihood

---

[3] The timing and outcome of any appeal of any adverse decision by the BIA to the Court of Appeals is of course speculative.  The *Reid* opinion did not take a position on that issue.  390 F. Supp. 3d at 219 n.4 (noting that court did not take position on issue of whether "the period of time while a petition for review with a circuit court is pending should factor into the reasonableness analysis").

that proceedings in this case will end in the near future.

In summary, petitioner's renewed case before the immigration judge may take months, and any appeal of an unfavorable outcome to the BIA may as well. His application for U Visa will have an unpredictable effect on the length of proceedings. The second factor therefore weighs in favor of petitioner.

### 3.   Period of Detention Compared to Criminal Sentence

The third factor compares the length of detention with the length of petitioner's criminal sentence. The length of detention by immigration authorities may become unreasonable when it is grossly disproportionate to the length of the detainee's criminal sentence. *See Lewis*, 2020 WL 2543156, at *3 (finding that nine and a half months in detention was not "grossly disproportionate to his six-month term of incarceration, particularly in light of the multiple suspended sentences in his record"); *Campbell*, 2020 WL 2129594, at *5-6 (holding that immigration detentions exceeding criminal sentences by up to six months "are not so grossly out of proportion as to outweigh the other relevant factors").[4]

Here, petitioner's criminal sentence—which was seven years, of which two years and ten months were served—significantly exceeds his period of administrative detention. The Court therefore remains unpersuaded that the length of petitioner's detention is grossly disproportionate to his criminal sentence.

### 4.   Promptness of Immigration Authorities and Detainee

The fourth factor is the promptness or delay of the immigration authorities and the detainee. Here, petitioner's proceedings continued without excessive delay until his appeal to

---

[4] "[T]his factor of the *Reid* analysis compares the period of ICE detention with the actual time spen[t] in incarceration as a result of the underlying criminal conviction, not the length of a related suspended sentence." *Da Graca*, 2020 WL 2616263, at *3 n.1.

the BIA.  The government requested a two-week continuance for briefing before the IJ on

February 10, 2021, to respond to the possibility raised by petitioner that he was a United States

citizen.[5]  The government has not otherwise sought any continuances or extensions during the

pendency of the immigration proceedings, and as noted, other delays have been due to

continuances requested by petitioner.[6]  The government added two additional charges of

removability on February 24, 2021, several months after the Notice to Appear was issued, but

that appears to have caused no additional delay and the IJ ultimately sustained all three charges

of removability including the charge originally included.  There is no indication that immigration

proceedings have simply languished on the docket.

The BIA's fourteen-month delay, however, should not be attributed to petitioner for

exercising his right to appeal, particularly because the BIA ultimately found one of his

contentions on appeal to be meritorious.  *See Reid*, 819 F.3d at 501 (noting that Reid's appeal

was not dilatory because he raised a colorable claim against deportation and "vigorously

contested" removal).  The BIA's decision contains no explanation for its delay, but the period is

well beyond the average length of an appeal heard by the BIA.  *See Reid*, 390 F. Supp. 3d at 212.

In light of the BIA's fourteen-month delay addressing petitioner's appeal, this factor

weighs in favor of petitioner.

### 5.      Likelihood That Proceedings Will Culminate in Final Removal Order

The final *Reid* factor considers whether it is likely that proceedings will culminate in a

---

[5] Petitioner has suggested that this continuance was due to DHS listing the wrong statute for one of the
charges of removability, (Pet. ¶ 48), but during oral argument, respondent contested that characterization.  The
transcript for the February 10, 2021, hearing demonstrates that DHS orally corrected an erroneous statute in the
Notice to Appear, but received the continuance "to brief [citizenship] issues in this case."  (Pet. Ex. 14 at 14).

[6] Petitioner attributes the 45-day delay resulting from his second requested continuance to the immigration
judge, apparently because he had no way of knowing that the IJ would grant him a continuance that long.  However,
that is not properly attributable to the government because the continuance was at petitioner's request.

final removal order.  Courts generally consider the prior ruling of the immigration judge when assessing the likelihood of final removal.  *See Bonnet v. Smith*, 2019 WL 11029146, at *4 (D. Mass. July 23, 2019) (reasoning that "there is a significant likelihood the proceedings will culminate in a final removal order against Petitioner since the IJ has already rejected his CAT application"); *Goncalves v. Moniz*, 2020 WL 2198526, at *3 (D. Mass. May 6, 2020) (stating that "the Court cannot say that Petitioner is likely to succeed on appeal.  The IJ ordered Petitioner's deportation after careful consideration of the positive and negative equities in Petitioner's case"); *Tahil v. Moniz*, 2020 WL 2560967, at *3 (D. Mass. May 20, 2020) (explaining that IJ's decision was "Court's best guide in determining the likelihood that the proceedings will conclude in a final removal order"); *Lewis*, 2020 WL 2543156, at *3 (same).

While the immigration judge serves as the primary factfinder in removal cases, the BIA may review an immigration judge's fact and credibility determinations for clear error.  8 C.F.R. § 1003.1(d)(3)(i).  Where the BIA has concluded that the immigration judge's fact and credibility determinations were not correct, it is appropriate to look to the BIA's decision to assess the likelihood of final removal.

Here, the BIA found that the immigration judge did not provide proper findings of fact and analysis of credible opinions that would enable an appellate panel to review petitioner's Convention Against Torture claim.  It noted that the immigration judge found petitioner's expert witness credible but did not determine the evidentiary weight of her testimony or otherwise analyze aspects of her testimony relevant to petitioner's specific circumstances.  Furthermore, the BIA noted that the immigration judge found petitioner's testimony about his risk of torture in Haiti to be credible and supported by evidence, yet discounted his claim as speculative without identifying any credibility concerns.  Finally, it found that the immigration judge did not

adequately analyze other relevant issues that might inform petitioner's risk of torture.

Petitioner contends that the strength of his appeal makes a final removal order unlikely.[7] The government's supplemental briefing does not analyze the BIA's decision at all. Although the BIA did not accept petitioner's other arguments on appeal, its remand to the immigration judge suggests that petitioner has a "colorable" claim against deportation that "draw[s] into question [his] presumed deportability." *Reid*, 819 F.3d at 501. Accordingly, while the BIA's decision is far from conclusive, it appears that the final *Reid* factor weighs in favor of petitioner because the BIA's decision suggests that he has a colorable argument against deportation.

### 6.     Additional Factors

Beyond the *Reid* factors, petitioner urges the court to reconsider its earlier finding on two additional factors that make his continued detention unreasonable:  the undue hardship that his detention poses on his family, and the conditions of his detention at Plymouth.  Petitioner has not demonstrated, however, that the evidence sufficiently warrants reconsideration of either of those factors.

### C.     Conclusion

Petitioner's detention has exceeded one year, and the other factors, taken as a whole, are sufficient to establish that continued detention without a bond hearing likely would constitute a due-process violation.  The Court accordingly concludes that he is entitled to a bond hearing to ascertain whether he may be released pending adjudication of his claim.  To be clear, the Court is not determining that he must be released from custody; rather, it is concluding that he is entitled to a bond hearing to determine whether his release "will not pose a danger to the safety of other

---

[7] Petitioner also contends that his likelihood of relief through a U Visa weigh in his favor on this factor. (Pet. ¶ 50).  However, petitioner is currently only in the process of applying for a U Visa (*id.* at ¶ 44), and does not allege a "bona fide" determination of his U Visa petition.  *See V.U.C. v. United States Citizenship & Immigr. Servs.*, 2021 WL 3667712, at *1 n.1. (D. Mass. Aug. 18, 2021).

persons or of property and is likely to appear for any scheduled proceeding." U.S.C. § 1226(c)(2).

III.    <u>**Burden of Proof at Petitioner's Bond Hearing**</u>

The parties disagree as to whether at a bond hearing the burden of proof will be on the petitioner to demonstrate that he is not a flight risk or danger to the community. Petitioner contends that the burden of proof is controlled by the First Circuit's recent decision in *Hernandez-Lara v. Lyons*. In that case, the court, relying on *Mathews v. Elridge*, 424 U.S. 319 (1976), determined that the burden of proof in a bond hearing for a petitioner detained pursuant to 8 U.S.C. § 1226(a) should be on the government to prove that the petitioner is a flight risk or danger to the community by clear and convincing evidence. *Id.* at 39. That decision, however, applies only to § 1226(a) detainees. As the First Circuit acknowledged, "the circumstances [ ] are quite different" in § 1226(c) cases. *Id.* at 36. In § 1226(c) cases, the government must detain a noncitizen who has committed one of the crimes specified in the statute; in § 1226(a) cases, the government has discretion to detain, and many detainees may not have a criminal record at all. Moreover, the Supreme Court's decision in *Demore v. Kim* makes clear that Congress, when it enacted §1226(c), was concerned about the particular risk of criminal aliens failing to appear for removal proceedings. *Demore v. Kim*, 538 U.S. 510, 518-19 (2003). Justice Kennedy, in a concurring opinion, explained that a petitioner who successfully challenged his continued detention under the Due Process Clause would have the burden to show that he was not a flight risk or danger to the community at his bond hearing. *Id.* at 532 (Kennedy, J., concurring).

In sum, placing the burden of proof on the petitioner in a § 1226(c) bond hearing aligns with the First Circuit's reasoning and the Supreme Court's findings of congressional intent. At his bond hearing, petitioner will have the burden of proof to show that he is not a flight risk or a danger to the community.

**IV.**     <u>**Conclusion**</u>

For the foregoing reasons, the petition for writ of habeas corpus is GRANTED in part.  It is hereby ORDERED that petitioner Anderson Alphonse shall be afforded an individualized bond hearing before an immigration judge within 28 days of the entry of this memorandum and order, at which he shall bear the burden of proving that his release will not pose a danger to the safety of other persons or of property and that he is likely to appear for any scheduled proceeding.  If such a bond hearing is not held within that period, absent further order of this Court, respondent shall show cause in writing within three business days after the expiration of that 28-day period why respondent should not be released from custody.

**So Ordered.**


                                                        /s/ F. Dennis Saylor IV
                                                        F. Dennis Saylor IV
Dated: October 17, 2022                                 Chief Judge, United States District Court

16